## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SARAH REISS,
an individual,

        Case No.:

     Plaintiff,

v.

KAFENE, INC.,
a foreign business corporation,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

     Defendants.

_____/

### PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff, SARAH REISS, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Aaron M. Swift, Esq. as Lead Counsel for Plaintiff.

### COMPLAINT

**COMES NOW**, Plaintiff, SARAH REISS (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, KAFENE, INC., (hereinafter, "Kafene"), EQUIFAX INFORMATION SERVICES, LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC.

1

(hereinafter, "Experian"), and TRANS UNION LLC, (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.      This is an action brought by an individual consumer for damages for Kafene's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Kafene improperly credit-reported and subsequently improperly verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union that was created or allegedly incurred as a result of identity theft and fraud.  More specifically, despite Plaintiff advising Kafene that she did not open the alleged account, did not use the alleged account, and did not benefit from the account in any way—and after Plaintiff disputed Kafene Inc.'s reporting of such erroneous information directly to Equifax, Experian, and Trans Union—Kafene *continued* to report such account with a significant, fraudulent balance due and past-due.

2.      Further, this is an action for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union each continued to incorrectly report Plaintiff as the individual responsible for the balance allegedly owed on the Kafene account after Plaintiff disputed and advised that any balance allegedly owed was a result of identity theft and fraud, and after Plaintiff provided information to Equifax, Experian, and Trans Union in support of her dispute, including but not limited to an FTC identity theft affidavit and a police report.

2

3.      Further, this is an action for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union failed to refer Plaintiff's dispute regarding identity theft and fraud to each of the other consumer reporting agencies after receiving multiple disputes from Plaintiff and wherein Equifax, Experian, and Trans Union each failed to block information identified in Plaintiff's credit reports resulting from identity theft within four (4) business days of receiving disputes from Plaintiff that properly identified Plaintiff, included an identity theft report filed with a law enforcement agency, identified the information resulting from identity theft and fraud, and asserted that Plaintiff did not initiate or authorize the transactions resulting in the information reported by Equifax, Experian, and Trans Union.

4.      Finally, this is an action for damages for Kafene's violations of the Florida Consumer Collection Practices Act, Chapter 559 Florida Statutes (hereinafter, "FCCPA"), wherein Kafene communicated with Plaintiff in an attempt to collect a consumer debt Kafene knew was not legitimately owned by Plaintiff.

## JURISDICTION, VENUE & PARTIES

5.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 and pursuant to the FCRA, 15 United States Code Section 1681, *et seq*. The Court has authority to issue a declaratory judgment under 28 United States Code, Section 2201 and has supplemental authority over Plaintiff's FCCPA claims pursuant to 28 United States Code, Section 1367.

6.      Defendants are subject to the jurisdiction of this Court as Defendants

3

each regularly transact business in this District.

7.      Venue is proper in this District as the acts and transactions described herein occur in this District.

8.      At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

9.      At all material times herein, Kafene, Inc. is a foreign business corporation existing under the laws of the state of Delaware with its principal place of business located at 115 W. 27th Street, 5th Floor, New York, New York 10001.

10.     At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

11.     At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

12.     At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

13.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper

utilization of such information.  *See* 15 United States Code, Section 1681b.

14.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

15.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

16.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

17.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

18.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or

accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

19.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

20.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## FCCPA STATUTORY STRUCTURE

21.     The FCCPA is a state consumer protection statute, modeled after the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (hereinafter,

"FDCPA"), a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. 15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

22. The FCCPA and FDCPA impose civil liability on any creditor/person as well as any debt collector, and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts. 15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

23. Specifically, the FCCPA and FDCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

24. For example, the FCCPA prohibits a person from attempting to collect by communicating with a consumer in a manner reasonably expected to abuse or harass a consumer or by communicating in an attempt to collect a debt that is known to be illegitimate or by asserting a legal right that does not exist. *See* Fla. Stat. §§ 559.72(7) and (9).

## GENERAL ALLEGATIONS

25. At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

26. At all material times herein, Plaintiff is an alleged "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8) because she is an

individual and allegedly obligated to pay a debt.

27.    At all material times herein, Kafene, itself and through its subsidiaries, regularly extends credit and leases—and credit reports debts associated with the same—allegedly owed by consumers residing in Pinellas County, Florida.

28.    At all material times herein, Kafene furnishes information to Equifax, Experian, and Trans Union concerning an alleged delinquent balance on a consumer account that was created as a result of identity theft and fraud, referenced by Kafene account number referenced by 4GW**** (hereinafter, the "Alleged Debt" or the "Account").

29.    At all material times herein, Plaintiff did not authorize any individual or entity to open the Account in her name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any good or services as a result of any transactions made creating the Alleged Debt.

30.    At all material times herein, Kafene is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

31.    At all material times herein, Kafene is a "creditor" as defined by Florida Statutes, Section 559.55(5).

32.    At all material times herein, Kafene attempts to collect the Alleged Debt from Plaintiff.

33.    At all material times herein, the Alleged Debt is alleged consumer debt, a result of a transaction for goods or services, incurred primarily for personal,

household, or family use.

34.    At all material times herein, Kafene is a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. § 559.55(5); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

35.    At all material times herein, Kafene's conduct, with regard to the Alleged Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

36.    Specifically, at all material times herein, Kafene made telephone calls to Plaintiff in an attempt to collect the Alleged Debt.

37.    At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

38.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

39.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

40.    On or about February 6, 2025, Plaintiff's personal information was

obtained by an unknown third-party and used to apply for credit with Kafene in Plaintiff's name using her personal information and without her knowledge or consent.

41.    Following the credit application to Kafene, a credit account was opened in Plaintiff's name without her knowledge or consent.

42.    In or around March 2025, Plaintiff first received notice of the fraudulent Account when Plaintiff received two telephone calls from Kafene, an online lease to own retailer with headquarters in New York City who was seeking to confirm a furniture delivery.

43.    Plaintiff did not answer the first call as it was an unknown number. After answering the second call from the same phone number identified as Kafene, Kafene's employee, agent, and/or representative sought to confirm a furniture delivery that purchased in Plaintiff's name.

44.    Plaintiff did not purchase furniture from Kafene or any of its affiliates, did not schedule a furniture delivery, she did not confirm the furniture delivery, she had no knowledge of a furniture order or account made in her name to purchase furniture, and has never received any goods, services, or benefits from Kafene whatsoever.

45.    Plaintiff declined the furniture delivery and advised Kafene that she did not schedule the delivery nor did she have an open Account with Kafene at any point in time.

46.    Kafene hung up the phone as Plaintiff attempted to explain the error.

47.    Following the first time Plaintiff spoke with Kafene and explained that

she did not purchase furniture or authorize a furniture delivery, Kafene repeatedly called Plaintiff's cellular telephone in an attempt the Alleged Debt from Plaintiff.

48.    Kafene made the immediately aforementioned telephone calls despite receiving notice and possessing actual knowledge that Plaintiff did not apply for the Account creating the Alleged Debt and that such Alleged Debt was created as a result of identity theft and fraud.

49.    Kafene's repeated and continued telephone calls to Plaintiff constitute communications made in an attempt to collect an alleged consumer debt from Plaintiff.

50.    Notably, Kafene would not leave a voicemail when calling Plaintiff's cellular telephone.

51.    Shortly after Plaintiff first spoke with Kafene by telephone, Plaintiff reviewed her credit reports and learned that Equifax, Experian, and Trans Union were reporting a new tradeline account (i.e., the Account) furnished by Kafene as Plaintiff's personal account and personal responsibility with a balance due on the Account.

52.    From reviewing her credit report, Plaintiff learned that not only was the Account taken out in her name, but the Account already reflected two (2) missed payments resulting in the Account being reported as an adverse and derogatory account.

53.    On or about April 4, 2025, Plaintiff filed an Identity Theft Affidavit with the Federal Trade Commission, referenced by report number 185790459, wherein she swore under oath and penalty of perjury that she did not apply for or open the Account

and that Plaintiff believes the Account was opened fraudulently as a result of identity theft.

54.     In addition, on or about April 5, 2025, Plaintiff filed an investigation Report for Identity Theft with the St. Petersburg Florida Department, referenced by case number 2025-011845, wherein she *again* swore under oath and penalty of perjury that she did not apply for or open the Account and believes that the account was opened fraudulently as a result of identity theft.

55.     In or around March 2025 or April 2025, Plaintiff disputed Equifax's reporting of the Account to Equifax wherein she asserted the Account did not belong to her and was opened as a result of identity theft and fraud (hereinafter, "First Dispute").

56.     Equifax notified Kafene of Plaintiff's First Dispute.

57.     In response to the First Dispute, Kafene wrongfully verified its reporting of the Account to Equifax.

58.     On or about April 16, 2025, Equifax sent dispute results to Plaintiff which advised that Equifax purportedly verified the Account with Kafene as belonging to Plaintiff.

59.     In addition, on Plaintiff's Equifax credit report, Equifax reported the Account as 30-59 days past due as of April 2025 with a past due balance of $1,121.00 and an overall balance owed of $4,544.00 yet *failed* to mark the Account as disputed.

60.     Plaintiff then obtained her Trans Union's credit report dated May 5, 2025, which also reported the Account as at least 30 days past-due in the amount of

$1,121.00 and an overall balance of $4,544.00.

61.     Finally, Plaintiff obtained her Experian credit report dated May 5, 2025, which reported the Account as 30 days late in April 2025 in the amount of $1,121.00 and an overall balance of $4,544.00.

62.     On or about May 15, 2025, Plaintiff sent an identical letter to Equifax, Experian, and Trans Union—with the assistance of her attorneys—advising that the Account was opened as a result of identity theft and fraud and disputing Defendants' reporting of the Account (hereinafter, "Second Dispute").

63.     More specifically, Plaintiff's Second Dispute advised that Plaintiff did not open the Account, requested that Defendants investigate, and requested that Defendants delete their reporting of the Account.

64.     Further, Plaintiff enclosed a copy of her Federal Trade Commission Theft Affidavit dated April 4, 2025, Plaintiff's St. Petersburg Police Department Report dated April 5, 2025, Plaintiff's Florida Driver's License, and Plaintiff's Social Security card in support of her Second Dispute.

65.     Additionally, on or about May 15, 2025, Plaintiff's attorneys sent a letter directly to Kafene advising of Plaintiff's legal representation with respect to the Alleged Debt, provided contact information for Plaintiff's legal counsel, and *again* advised Kafene that the Alleged Debt and Account reported by Kafene was opened as a result of identity theft and fraud.

66.     On or about June 3, 2025, Trans Union sent results of Plaintiff's Second Dispute advising Trans Union investigated the information disputed by Plaintiff and

verified as accurate the reporting of the Account with Kafene.

67.    Importantly, despite Kafene and Trans Union previously reporting the overall balance allegedly owed as $4,544.00 as of May 2025, Kafene and Trans Union reported the Account with a balance of $12,546.00 as of May 2025, a past due balance of $1,762.00, 30 days late as of March of 2025, and overall 60 days past due.

68.    Plaintiff did not receive any communications from Experian or Equifax in response to her Second Dispute.

69.    Equifax did not block or delete its reporting of the Account within four (4) days of receiving Plaintiff's Second Dispute.

70.    Equifax failed to include a fraud alert in Plaintiff's Equifax credit file after receiving Plaintiff's Second Dispute.

71.    Experian did not block or delete its reporting of the Account within four (4) days of receiving Plaintiff's Second Dispute.

72.    Experian failed to include a fraud alert in Plaintiff's Experian credit file after receiving Plaintiff's Second Dispute.

73.    Trans Union did not block or delete its reporting of the Account within four (4) days of receiving Plaintiff's Second Dispute.

74.    Trans Union failed to include a fraud alert in Plaintiff's Trans Union credit file after receiving Plaintiff's Second Dispute.

75.    On or about July 1, 2025, and because she did not receive dispute results from Equifax and Experian, Plaintiff obtained copies of her credit reports from Equifax, Experian, and Trans Union, respectively.

76.    Despite Plaintiff's First Dispute to Equifax and Plaintiff's Second Dispute to Equifax, Experian, Trans Union, and Kafene *still* reported the Account as open, past-due, and as Plaintiff's personal financial obligation.

77.    Notably, Equifax, Experian, Trans Union, and Kafene were reporting conflicting Account information following Plaintiff's May 2025 dispute.

78.    More specifically, Equifax, Experian, and Trans Union were each reporting different balances on the Account, different past-due balances, and were each reporting the Account 30 days late in different months.

79.    For example, in a letter to Plaintiff dated June 3, 2025, Trans Union "verified" its reporting of the Account with Kafene, with a $12,497.00 balance due, $1,762.00 past due balance, and 30 days late as of March of 2025.

80.    Importantly, as of May 2025, Trans Union was reporting the Account with a balance of $4,500.00, but following Plaintiff's May dispute, Trans Union reported the alleged balance in excess of $12,000.00.

81.    Contrastingly, as of July 2025, Equifax reported the Account as "investigation in progress" with a total balance of $4,544.00, a past-due balance of $1,211.00, and 30 days late as of April of 2025.

82.    As such, Equifax clearly received Plaintiff's Second Dispute yet again failed to delete or block its reporting of the Account.

83.    Further, as of July 2025, Experian reported a $12,497.00 balance due and as $2,563.00 past-due while reporting the Account as 30 days late in April 2025, 60 days late in May 2025, and 90 days late in June 2025.

84.    Thus, the fraudulently opened Account was being reported with vastly different balances and past due balances and with conflicting historical information.

85.    When Plaintiff obtained her Experian report in July 2025 because she did not receive a response from Experian regarding her Second Dispute, Experian wholly failed to investigate the Kafene Account and failed to mark the Account as disputed by Plaintiff.

86.    Defendants' reporting of the Account as owed by Plaintiff personally is inaccurate because Plaintiff did not open the Account and therefore the Account must have been opened as a result of identity theft and fraud.

87.    Furthermore, Defendants' reporting of historical or current late payment information is inaccurate because any alleged balance owed was the result of identity theft and fraud, and therefore, Plaintiff could not be late or past-due on a balance she does not owe.

88.    Reporting Plaintiff as the individual responsible for the Kafene Account is materially misleading because Plaintiff did not authorize anyone to apply for the Account in her name and did not receive the benefit of any transactions made using the Account.

89.    On or about July 10, 2025, Plaintiff sent *another* letter to Equifax, Experian, and Trans Union, with the assistance of her attorneys, *again* disputing Defendants' reporting of the fraudulent Kafene Account (hereinafter, "Third Dispute").

90.    More specifically, Plaintiff's Third Dispute *again* advised Equifax,

Experian, and Trans Union that Plaintiff did not open the Account, advised that an unknown third party must have opened the Account in Plaintiff's name without her knowledge or approval, advised that Plaintiff filed a police report, and advised Plaintfiff file an identity theft affidavit with the FTC regarding the identity theft and fraud on the Account.

91.    Plaintiff *again* enclosed a copy of her Federal Trade Commission Theft Affidavit dated April 4, 2025, Plaintiff's St. Petersburg Police Department Report dated April 5, 2025, Plaintiff's Florida Driver's License, and Plaintiff's Social Security Card in support of her Third Dispute.

92.    In addition to the above documentation, Plaintiff also included copies of pages from her Trans Union reports before her initial May 2025 dispute and after her May 2025 dispute in order to illustrate that the fraudulently opened Account was being reported with vastly difference balances and past due balances with conflicting historical information.

93.    On or about July 29, 2025, Trans Union sent a letter to Plaintiff in response to her Third Dispute advising Trans Union deleted its reporting of the Kafene Account from Plaintiff's credit reports and credit file.

94.    No later than August 11, 2025, Plaintiff learned that Equifax was no longer reporting the Account.

95.    Plaintiff did not receive dispute results from Experian regarding her Third Dispute.

96.    However, on or about August 19, 2025, Plaintiff obtained a copy of her

Experian report and Experian was no longer reporting the Kafene Account.

97.    After Plaintiff's First Dispute and Second Dispute, Equifax, Experian, and Trans Union each prepared and published Plaintiff's credit information to her current creditors and potential lenders which included the Account as an outstanding, past-due account obligation owed by Plaintiff, resulting in the Account appearing as a derogatory account on Plaintiff's credit reports and negatively impacting Plaintiff's credit scores.

## DAMAGES

98.    As a result of Defendants' reporting of the Account, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account asserted as owed by her personally if she needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

99.    Additionally, Plaintiff's credit score dropped as a result of Defendants' derogatory reporting of the Account.

100.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account with a balance past-due, she did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information

resulting in the Account being reported as a derogatory, negative, or adverse account.

101.    Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Defendants unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's Account after receiving a police report and FTC identity theft affidavit sworn by Plaintiff under oath and penalty of perjury.

102.    Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that she did not open the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account.

103.    Plaintiff retained Swift Law, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

104.    The FCCPA, Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

105.    The FCRA, 15 United States Code, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff

prevail in this matter against Defendants.

## COUNT ONE:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)
### (As to Kafene Only)

Plaintiff re-alleges paragraphs one (1) through one hundred five (105) as if fully restated herein and further states as follows:

106.   Kafene is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax and TransUnion delete the Account from Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

107.   As described above,  Plaintiff was not and is not personally liable for the Account, because: (i) Plaintiff did not personally apply for the Account or open the Account; (ii) Plaintiff did not authorize any person to open  the Account in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account; and (iv) Plaintiff completed a Federal Trade Commission Theft affidavit and an identity theft Police report.

108.   Despite Plaintiff not being responsible for the Account, and despite Kafene receiving notice of Plaintiff's disputes from Equifax, Experian, and Trans

Union, Kafene willfully and/or negligently failed to request that Experian, Equifax, and Trans Union delete the tradeline associated with the Account and continued to report derogatory, late payment information to Experian, Equifax, and TransUnion including as significantly past-due with an extensive balance owed on the Account.

109.   Between March 2025 and July 2025, Plaintiff disputed Kafene's reporting of the Account to Equifax, Experian, and Trans Union.

110.   At minimum, Kafene received notice of Plaintiff's First Dispute from Equifax and purportedly verified its reporting with Equifax in response to the First Dispute.

111.   Similarly, Kafene received notice of Plaintiff's Second Dispute from Trans Union and purportedly verified its reporting with Trans Union in response to the Second Dispute.

112.   The documents Plaintiff enclosed in support of her disputes included an FTC theft affidavit and police report.

113.   In response to Plaintiff's disputes, despite Kafene receiving notice of Plaintiff's disputes—including disputes directly from Plaintiff and her attorneys—Kafene failed to request that Equifax, Experian, and Trans Union delete the Account from Plaintiff's credit reports and credit files.

114.   Instead, Kafene purportedly verified and/or updated its reporting of the Account including significant balances due and significantly past-due, and with derogatory payment history.

115.   Kafene's refusal to request that Equifax, Experian, and Trans Union

update their reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as Kafene clearly possessed knowledge that the Account was opened due to identity theft and fraud.

116.   Kafene's re-investigations were not conducted in good faith.

117.   Kafene's re-investigations were not conducted reasonably.

118.   Kafene's re-investigations were not conducted using all information and documents reasonably available to Kafene.

119.   As a result of Kafene's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she was informed she may not qualify for credit as long as Kafene continued reporting the Account, believed she would not be able to obtain favorable credit terms as a result of Kafene's derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires.

120.   Plaintiff further suffered damage to her credit reputation as a result of Kafene's conduct, Kafene defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Kafene unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's Account after receiving a police report and FTC identity theft affidavit sworn by Plaintiff under oath and penalty of perjury.

121.   Further, as a result of Kafene's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Kafene that she did not open the Account including supplying Kafene with supporting documentation, Plaintiff must

simply endure Kafene's reporting of the Account.

122.   Kafene's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

123.   Kafene's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)
### (As to Equifax, Experian, and Trans Union)

Plaintiff re-alleges paragraphs one (1) through one hundred five (105) as if fully restated herein and further states as follows:

124.   Equifax, Experian, and Trans Union are subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

125.   Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Kafene Account.

126.   Specifically, despite Plaintiff *repeatedly* advising Equifax, Experian, and

Trans Union that Plaintiff did not open the Account, did not authorize any other person to open the Account in her name or on her behalf, did not make any charges on the Account, did not receive the benefit of any money, goods, or services obtained as a result of any transactions or charges made on the Account—and therefore, the Account was opened as a result of identity theft and fraud—Experian, Equifax, and TransUnion each continued to report the Account as with a balance past-due, and with fraudulent derogatory payment history resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

127.   Further, Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her credit reports and credit files.

128.   For example, despite Plaintiff's repeated disputes including documents to corroborate that she was the victim of identity theft and to corroborate Plaintiff's identity—including an FTC affidavit and police report—Equifax , Experian, and Trans Union each failed to request documents from Kafene in support of Kafene's reporting of the Account.

129.   Despite Plaintiff notifying Equifax, Experian, and Trans Union of their reporting errors and providing documents in support of her disputes, Equifax, Experian, and Trans Union each continued to report the Account with a past-due balance.

130.    As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she knew he would not be able to qualify for or obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

131.    Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that she did not open the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account.

132.    Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

133.    Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i *et seq.***
**(As to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one hundred five (105) as if fully restated herein and further states as follows:

134.    Equifax, Experian, and Trans Union are subject to, and each violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

135.    Specifically, Equifax, Experian, and Trans Union each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

136.    Overall, Plaintiff's disputes provided Equifax, Experian, and Trans Union with sufficient information and supporting documentation allowing Equifax, Experian, and Trans Union to identify that the alleged balance owed on the Account was created as a result of identity theft and fraud, and therefore, should be deleted and removed from Plaintiff's credit reports and credit files.

137.    For example, despite Plaintiff's repeated disputes including the identity theft police report information, Equifax, Experian, and Trans Union each failed to request documents from Kafene in support of Kafene's reporting of the Account.

138.    Following Plaintiff's First Dispute, Equifax continued to report the Account in Plaintiff's credit reports and files with a significant balance due as well as derogatory, late payment information.

139.    Furthermore, following Plaintiff's First Dispute, Equifax failed to even mark the Account as disputed.

140.    Following Plaintiff's Second Dispute, Equifax, Experian, and Trans Union continued to report the Account in Plaintiff's credit reports and files with a significant balance due as well as derogatory, late payment information.

141.    Following Plaintiff's Second Dispute, Experian wholly failed to investigate and failed to mark the Account as disputed by Plaintiff.

142.    Given that Plaintiff did not personally open the Account, did not authorize anyone to open the Account in her name, and did not benefit from the Account in any way, and given that Equifax, Experian, or Trans Union did not request any documents from Kafene supporting Kafene's reporting of the Account, Equifax, Experian, and TransUnion could not reasonably verify that Plaintiff is personally responsible for the balance allegedly owed on the Account.

143.    As such, Equifax's, Experian's, and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the

27

inaccurate information in Plaintiff's credit reports and credit files.

144.    Such reporting is false and evidences Equifax's, Experian's, and Trans Union's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

145.    Equifax's Experian's and Trans Union's reinvestigations of Plaintiff's disputes were not conducted reasonably.

146.    Equifax's, Experian's, and Trans Union's reinvestigations merely copied and relied upon the inaccurate information conveyed by Kafene.

147.    Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes were not conducted in good faith.

148.    Equifax's, Experian's, and Trans Union's reinvestigation procedures are unreasonable.

149.    Equifax's, Experian's, and Trans Union's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Equifax, Experian, and Trans Union.

150.    Equifax's, Experian's, and TransUnion's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the alleged balance was created as a result of identity theft and fraud—was done in bad faith.

151.    Equifax's, Experian's, and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

152.    As a result of Equifax's Experian's and Trans Union's conduct, actions,

and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she knew she would not be able to obtain favorable credit terms as a result of Defendant's derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

153.    Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that she did not open the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account.

154.    Equifax's Experian's and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

155.    Equifax's, Experian's and Trans Union's actions in violation of 15 United States Code, Section 1681i *et seq.*, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTIONS 1681c-1 and c-2**

**(As to Experian, Equifax, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through one hundred five (105) as if fully restated herein and further states as follows:

156.    Equifax, Experian, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section 1681c-1 by failing to include a fraud alert in Plaintiff's credit file after receiving Plaintiff's Second dispute.

157.    Further, Equifax, Experian, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section 1681c-2 by failing to block information identified in Plaintiff's credit reports resulting from identity theft within four (4) business days of receiving disputes from Plaintiff that properly identified Plaintiff, included an identity theft report filed with a law enforcement agency, identified the information resulting from identity theft and fraud, and asserted that Plaintiff did not initiate or authorize the transactions resulting in the information reported by Equifax, Experian, and Trans Union.

158.    More specifically, Equifax, Experian, and Trans Union each received an identical copy of Plaintiff's Second Dispute which identified the Kafene Account as resulting from identity theft and fraud, enclosed documents to corroborate Plaintiff's identity, enclosed an FTC identity theft affidavit, and enclosed a police report filed with the St. Petersburg, Florida Police Department.

159.    Defendants willfully and/or negligently failed to include a fraud alert in Plaintiff's Equifax, Experian, and Trans Union credit files after receiving Plaintiff's Second Dispute.

160.    Experian, Equifax, and Trans Union failed to block the Accounts information disputed by Plaintiff within four (4) business days of receiving Plaintiff's Second Dispute.

161.    Instead, Defendants continued to report the Account with a balance due and past-due, resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

162.    As such, Equifax, Experian, and Trans Union each failed to include a fraud alert following Plaintiff's Second Dispute and each failed to block their respective reporting of the Account within four (4) business days of receiving Plaintiff's Second Dispute.

163.    As a result of Equifax's Experian's and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was deterred from making credit applications as she knew she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

164.    Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that she did not open the Account including supplying Defendants with supporting documentation, Plaintiff

must simply endure Defendants' reporting of the Account.

165.    Defendants' actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

166.    Defendants' violations of 15 United States Code Section 1681c-1 and/or 1681c-2, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT FIVE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF FLORIDA STATUTES, SECTIONS 559.72(7) and (9)
### (As to Kafene Only)

Plaintiff re-alleges paragraphs one (1) through one hundred five (105) as if fully restated herein and further states as follows:

167.    Kafene is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by communicating with Plaintiff in an attempt to collect an alleged consumer debt through means which can reasonably be expected to abuse or harass Plaintiff and violated Florida Statutes, Section 559.72(9) by communicating with Plaintiff in an attempt to collect the Alleged Debt despite Kafene possessing knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that Kafene knows does not exist.

168.    Specifically, as stated herein, Plaintiff was not and is not personally liable

for the Alleged Debt, because: (i) Plaintiff did not personally initiate the loan that created the Alleged Debt; (ii) Plaintiff did not authorize any person to initiate the loan that created the Alleged Debt; (iii) Plaintiff specifically rejected Kafene's request to deliver furniture to her home and Plaintiff instructed Kafene to close the Account as fraudulent; (iv) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Alleged Debt; and (v) Plaintiff's submitted an identity theft affidavit under penalty of perjury and filed a police report in support of her assertions that she did not initiate the loan.

169.    Plaintiff repeatedly provided the above-listed information to Kafene including the affidavit and police report information in support of her disputes.

170.    As such, Kafene possessed actual knowledge that Plaintiff did not legitimately owe the Alleged Debt, yet Kafene continued to communicate directly with Plaintiff in an attempt to collect the Alleged Debt.

171.    More specifically, following Plaintiff's first telephone conversation with Kafene in March 2025, despite Kafene possessing knowledge that the Alleged Debt was not legitimately incurred by Plaintiff and therefore not legitimately owed by Plaintiff, Kafene placed telephone calls to Plaintiff's cellular telephone regarding the Alleged Debt.

172.    Kafene communicated telephone calls to Plaintiff in an attempt to collect the Alleged Debt as Kafene possessed no other reason to repeatedly call Plaintiff's cellular telephone.

173.    Notably, Kafene did not leave a voicemail when repeatedly calling

Plaintiff regarding the Alleged Debt.

174.    As such, Kafene attempted to collect the Alleged Debt—an amount known to be illegitimate—and asserted a legal right that does not exist in its communications made in an attempt to collect the Alleged Debt from Plaintiff.

175.    Despite Plaintiff's exhaustive efforts advising Kafene that the Alleged Debt was the result of identity theft and fraud, Kafene continued to communicate with Plaintiff in an attempt to collect the Alleged Debt.

176.    Kafene's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite her repeated attempts to prevent the fraudulent activity from happening in the first place and her repeated attempts to notify Kafene of the fraudulent activity, Kafene could and would continue to attempt to collect the Alleged Debt from Plaintiff—and continue its reporting to Equifax, Experian, and Trans Union—unless and until Plaintiff paid the Alleged Debt in full.

177.    As a result of Kafene's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Kafene that she did not initiate or authorize the loan including supplying Kafene with supporting documentation, Plaintiff must simply endure Kafene's ongoing and invasive debt collection communications.

178.    Kafene's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and

harassment as is contemplated under Florida Statutes, Sections 559.72(7) and 559.72(9).

179.    As a direct and proximate result of Kafene's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Defendants for maximum statutory damages for violations of the FCRA;

b.    Judgment declaring that Kafene violated the FCCPA;

c.    Judgment enjoining Kafene from engaging in further conduct in violation of the FCCPA;

d.    Judgement against Kafene for maximum statutory damages under the FCCPA;

e.    Actual damages in an amount to be determined at trial;

f.    Compensatory damages in an amount to be determined at trial;

g.    Punitive damages in an amount to be determined at trial;

h.    An award of attorney's fees and costs; and

i.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

SWIFT LAW PLLC

/s/ *Aaron M. Swift*

**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 091487
Sean E. McEleney, Esq., FBN 0125561
Jessica A. Cowan, Esq., FBN 1069016
11300 4th Street North, Suite 260
St. Petersburg, FL  33716
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jstephens@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*